IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville March 31, 2021

**STATE OF TENNESSEE v. SANTOS MORALES**

**Appeal from the Criminal Court for Shelby County**
**No. 18-00912/C18-01803      Carolyn W. Blackett, Judge**

———————————————————

**No. W2019-02019-CCA-R3-CD**

———————————————————

The Defendant, Santos Morales, was convicted by a Shelby County Criminal Court jury of aggravated sexual battery, a Class B Felony. *See* T.C.A § 39-13-504 (2018). The trial court sentenced the Defendant to ten years at 100% service and ordered the Defendant to register as a sexual offender. *See* T.C.A § 40-39-201 (2019). On appeal, the Defendant contends that the evidence is insufficient to support his conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Eric J. Montierth, Memphis, Tennessee, for the appellant, Santos Morales.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; Jermal Blanchard and Sarah Poe, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

The Defendant's conviction relates to the sexual battery of a minor in the early morning of December 19, 2016, at the house of a friend of both the victim's mother and the Defendant.

At the trial, Alisha Potter, the victim's mother, testified that in the "early evening" – roughly 5:30 p.m. – of December 18, 2016, she brought the victim, who was seven years

old at the time, and five of her other seven children to the home of her ex-boyfriend, Edwin Morales.[1]

Ms. Potter testified that after she put her kids to bed – four of whom, including the victim, went to bed in Mr. Morales's "children's bedroom" – she returned to the living room where she talked with Mr. Morales, Jasper Qualls, and the Defendant. Ms. Potter stated that Mr. Morales and the Defendant were drinking. Ms. Potter also said that she did not know the Defendant well but that she and Mr. Qualls were close friends.

Ms. Potter testified that she had a toothache that night and that, at around 12:30 a.m. on December 19, she took ibuprofen and went to bed in Mr. Morales's bedroom with Mr. Morales and two of her other children. Ms. Potter testified that she was awakened at around 4:00 a.m. by the victim yelling, "If you come back in this room again[,] I'm going to tell my mother."

Ms. Potter testified that she sat up and yelled to the victim but did not leave her room to investigate. Ms. Potter recalled that the victim did not respond to Ms. Potter's initial call, which prompted Ms. Potter to yell to the victim a second time, again asking the victim if everything was okay. Ms. Potter stated that when the victim did not respond, she assumed the victim had been talking in her sleep. Ms. Potter went back to sleep.

Ms. Potter testified that a few minutes after falling asleep, she was awakened by the victim's screaming. Ms. Potter said that the victim yelled, "I told you if you come in here[,] I'm going to tell my mother." Ms. Potter said that she went into the children's bedroom to check on the victim and the other children.

Ms. Potter testified that the children's bedroom door was open, although she had closed it earlier when she put them to bed. Ms. Potter said that some of her children's locations in the bed were noticeably different from where she had laid them earlier.

Ms. Potter testified that she approached the victim and asked her what was wrong. Ms. Potter said the victim told her the Defendant had touched the victim. Ms. Potter stated that she then searched for the Defendant, who was asleep on the living room floor and wore blue jeans, a navy blue T-shirt, and a red and black jacket. Ms. Potter stated she returned to the children's bedroom.

Ms. Potter testified that she asked the victim if she were certain about what had happened and that the victim answered she was. Ms. Potter said she moved the victim and

---

[1] The record does not reflect that Mr. Morales is related to the Defendant.

the other children into Mr. Morales's bedroom.  Ms. Potter testified that she did not leave Mr. Morales's house because she felt groggy from her medication and unsafe to drive.

Ms. Potter testified that the next morning, she asked the victim what had happened during the night.  Ms. Potter said the victim stated that the Defendant "went into the bedroom, picked up her sister, moved her sister, laid down next to her, and put his hands down her pants."  Ms. Potter said that she confronted the Defendant, who denied touching the victim, and that Ms. Potter left Mr. Morales's house with her children.  Ms. Potter said she took the victim to the police station to file charges.  Ms. Potter said she later received a phone call from a friend, who was also Mr. Morales's friend, offering money in exchange for her dropping the charges against the Defendant and for not coming to court.

Ms. Potter testified that the Defendant wore the same clothing when she found him asleep on the floor as he had worn earlier.  Ms. Potter testified that she did not remember the Defendant's having any distinguishing marks, such as scars, tattoos, or piercings.  Ms. Potter recalled that the Defendant did not have painted fingernails.

The victim, age ten at the time of the trial, testified that she was age seven in December 2016.  The victim said that Mr. Morales was her mother's friend and that her family would sometimes visit his house.  The victim remembered going to Mr. Morales's house on the night of the offense.  She recalled that Mr. Morales, her mother, five of her siblings, Mr. Qualls, and a man whom she did not know were the only people present.

The victim testified that after the children ate and played, Ms. Potter put them to bed.  The victim recalled sleeping between her brother J.E.[2] and one of her sisters, although she could not remember which sister.  The victim testified that while she slept, "the man that I didn't know came in the bedroom and touched my private parts" with his hands.  The victim said the man touched her skin under her panties.  The victim verified that her "private parts" meant her vaginal area by pointing and by stating that her private parts were "where [her] panties cover."  The victim said that when the man touched her, she kicked him and told him to stop and that he left.

The victim testified that the man returned to the room and touched her "privates" with his hands.  The victim said that she kicked and screamed and that he left the room.

When asked if she saw the man who touched her in the courtroom, the victim testified that she was "not for sure."  When asked if she saw someone who looked like the man who touched her that night, the victim pointed to the Defendant.

---

[2] This court will refer to the other minor children, the siblings of the victim, by their initials.

The victim testified that the bedroom was dark that night and that she thought the man wore bright blue nail polish. The victim also thought the man wore dark clothing, had black, curly hair, was Hispanic, and did not have any tattoos or piercings.

J.E., the victim's brother, testified that he was age thirteen at the time of the trial, that he was at Mr. Morales's house on the night of the offense, and that he remembered the relevant events. J.E. said he had not known the Defendant until that night. J.E. stated that he and his siblings ate, played, and went to bed. J.E. remembered waking to the victim's screaming and that he saw "Santos" leaving the room while covering his face with a shirt. J.E. was unable to identify the man he knew as Santos in the courtroom.

J.E. testified that Mr. Morales or Mr. Qualls who he saw because they had been asleep when Ms. Potter moved the children to Mr. Morales's room. J.E. said that he would have recognized Mr. Qualls if Mr. Qualls had been the man in the room that night. J.E. also stated that he had not heard any doors open and that Mr. Morales had slept in the room next door to the children's bedroom.

Memphis Child Advocacy Center forensic investigator Letitia Cole testified that she conducted a forensic interview of the victim on December 30, 2016. Ms. Cole said she completed a female anatomical diagram using the victim's description of where the Defendant touched her on her "middle part." This diagram was received as an exhibit but is not in the appellate record. A recording of the forensic interview was played at trial, but the recording is not in the appellate record.

Memphis Police Department Sergeant Angela Tucker testified that she investigated this case and observed Ms. Cole's forensic interview of the victim. Sergeant Tucker identified the Defendant as a suspect because Ms. Potter gave his name to Sergeant Tucker.

Sergeant Tucker testified that she attempted to speak to the Defendant but was unable to find him at his home. Sergeant Tucker said that defendants sometimes changed their appearances in order to "confuse the victim" and to prevent the police from "locating that person."

Shelby County Sheriff's Office employee Rubin Ramirez testified that he received a request for the recordings of the Defendant's jail calls. Discs containing recordings of the calls were received as exhibits but have not been included in the appellate record. One call was played for the jury. The record otherwise reflects that in the call, the Defendant said, "We could offer her something like $500 or something so that she doesn't show up," as translated by a Spanish language interpreter.

The Defendant elected not to offer proof.

On this evidence, the jury found the Defendant guilty of aggravated sexual battery. At the sentencing hearing, the trial court imposed a sentence of ten years' incarceration at 100% service and ordered the Defendant to register as a sexual offender. This appeal followed.

*Sufficiency of the Evidence*

The Defendant contends that the evidence is insufficient to support his conviction. He argues that the State failed to offer sufficient proof of his identity as the perpetrator. The State contends that the evidence of identity is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The identity of the perpetrator is a question of fact for the jury to determine. *State v Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

"Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim" where the victim is less than thirteen years of age.

T.C.A. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]" *Id.* § 39-13-501(6) (2018). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" *Id.* at (2).

Viewed in the light most favorable to the State, the evidence shows that the Defendant twice entered the bedroom where the seven-year-old victim slept and touched her "private parts" under her panties with his hands. At trial, the victim identified the Defendant as looking like the man who touched her. The victim testified that the perpetrator was the man whom she had not known before the night of the incident and that she had known all of the other people present at Mr. Morales's house that night. Ms. Potter testified that the victim identified the Defendant as the man who touched her. J.E. identified the man who touched the victim as someone other than Mr. Qualls and Mr. Morales and testified that Mr. Qualls and Mr. Morales had not been in the children's room that night. J.E. stated that both Mr. Qualls and Mr. Morales were asleep, that J.E. would have recognized Mr. Qualls, and that J.E. would have heard Mr. Morales's door.

From this evidence, we conclude that the evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that the Defendant committed aggravated sexual battery by intentionally touching the seven-year-old victim's vaginal area for the purpose of sexual arousal or gratification.

We have reached this conclusion despite the Defendant's failure to ensure that the trial exhibits were included in the appellate record. It is the appellant's responsibility to provide this court with "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). In a case with an incomplete record submitted by the appellant, if the "record is adequate for a meaningful review, the appellate court may review [the issue raised on appeal] with a presumption that the missing [evidence] would support the ruling of the trial court." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). In this case, the record is incomplete, yet adequate for a meaningful review. Thus, this court presumes that the missing exhibits further support our conclusion.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE